May it please the Court, Demetri Golphis of the Appellate Defenders Office, on behalf of John F. Taylor, a defendant appellate. In the interest of time, since it's getting close to lunch, I'll skip my usual introduction about the facts of the case and the issues and just jump straight into the first issue. Mr. Taylor was convicted of aggravated robbery and he was sentenced to a maximum of 15 years imprisonment. The conviction stemmed from a robbery of an assistant manager outside of the Circle K in Peoria. We've raised three arguments in this appeal. The first is that Mr. Taylor should receive a new trial because the prosecutor, during the rebuttal argument, improperly argued that the letters M and L on the cell phone records of Carol Bradley signified mobile and landline, and that that argument substantially prejudiced Mr. Taylor because that was not an argument properly based on evidence or reasonable inference from the evidence. Our second argument is that this Court should alternatively grant Mr. Taylor a new sentencing hearing because the trial just considered as an aggravating factor a gender-based stereotype that the victim was weak simply because she was a middle-aged woman. And our third issue on appeal is a request for a remand for improper imposition of fines and fees. The State agrees that this remedy is appropriate, so I'll not be addressing this issue unless the Court has questions. I'll certainly address them. I want to focus my argument today on the sentencing issue, and then, depending on how much time is left, I'll briefly address the new trial issue. With regard to sentencing, it's well established that a trial court cannot consider improper factors or unfounded beliefs or speculation as aggravating factors of sentencing. Nevertheless, that's what the trial judge did here. What the judge said, and I'll quote, when he was referring to the victim, Annie Sanders, he said, this was a middle-aged lady who was working at a gas station on Easter Sunday, and the next thing you know, she's laying on the ground with somebody, and according to the jury, Mr. Taylor, on top of her, robbed her. And I would be seriously considering giving Mr. Taylor 15 years with no record for that. That's one of the weakest classes in our society, and I don't understand. I'll never understand. I'm just old-fashioned. I'll never understand a man attacking, touching, hitting a female. I'll never understand it ever. Certainly, the belief that the victim was weak simply because she's a middle-aged woman is a gender-based stereotype, and for that reason, it was improper for the judge to consider that as an aggravating factor. There was no evidence in this case that the victim, Ms. Sanders, was weak. There was also no evidence that the robbers perceived her as weak. Now, the state on the field argues that, well, when you consider the nature of the offense, the fact that the robbers forced her to the ground and got on top of her, that shows that she's a weak person. That's just simply not the case. The testimony was that the robbers came to her with what she perceived to be a gun. Now, when someone comes at Ms. Sanders or anyone else with a gun, that person is susceptible to being physically overpowered. Unless someone is very, very brave and, some might argue, somewhat stupid, you're not going to try to put up a fight against someone when they're pointing a gun at you. You're open to being physically overpowered. So the fact that she was taken to the ground does not signify that she was weak. The state also argues that the judge had an opportunity to observe Ms. Sanders at the trial, and that maybe that's the reason why he thought that she was weak and vulnerable. But again, that's not the case because the judge at sentencing didn't refer to any characteristic of her to signify that she was weak. He didn't reference a small physique or anything like that. The only reason he gave was that she belonged to what he thought was one of the weakest classes of society, because she was a middle-aged woman. Finally, the state cites the HELM case, and HELM stands for the proposition that you can consider a victim's vulnerability. There was no evidence in this case that the victim was vulnerable or perceived to be vulnerable by the robbers. To the contrary, the state's theory at trial and the evidence showed that these robbers had inside information about the victim and what was going on at Circle K. They knew that she was going to be walking out of that store on Easter Sunday at noon with a bag of money to take to the bank. And the evidence signifies that because where they were hiding in a fenced-off garbage area out of view near where she was parked, and when they approached her and they took her to the ground, they immediately said, where's the money, where's the money? They knew she had money. They knew what she was doing. Don't you think that the judge could have meant that the circumstances of this, that they know she's going to be working, they know she's going to have this money, they know that, you know, one of the weakest things, because this is somebody that, you know, is just trying to pay their bills, just working, just following the rules, and, you know, by doing that, they, you know, then this happens to her. And, you know, rather than that it's, you know, because she's this teeny tiny female, they say, you know, I mean, I just don't know that I necessarily think the statement is that of, you know, it just seems that because he does not tie it directly to her, like, look at her, you know, I don't know that I, you know, I think there's other connotations to it.  First of all, if the judge was concerned with the fact that they had inside information and premeditated and that she was in a bad position, that's fine. But the problem with that is there was no other reason for the judge to refer to middle-aged women as the class. Or was he referring to the offenders as the weakest class, because, you know, I don't know, as I constantly am hearing my, you know, tween children say, you know, that's weak, you're weak, you know, Tyra, what an awful person, you know, I mean, that's a term of art, I think, now, or a phrase, you know, that's weak, you know, that's lame, that's terrible, why would you do something like that? You know, is it possible that that's what he's referring to? No, you're right, I don't believe that's a fair characterization for a record at all, because immediately after he said one of the weakest classes in society, he followed that up by saying, I'll never understand a man hitting a woman. And even assuming that there were other reasons to give the maximum sentence in this case, or something close to the maximum, what the judge said was, I'm considering giving you the maximum 15 years, even if you have no record, just because she's a middle-aged woman and I perceive her as weak. So even if there's other factors to consider, the judge placed substantial weight on the fact that this woman was a middle-aged woman and he thought she was weak. And again, I don't think you can fairly read what he said as he's referring to the robbers as weakest class of society. They may be the most despicable class of society, but weak, I don't think that's a fair reading from the record. To conclude on this issue, just to kind of wrap it up, again, what I said before, the judge placed substantial weight on this improper factor. He gave the defendant the maximum sentence of 15 years, so based on that, the trial judge, we submit, placed substantial weight on this factor, and that entitles Mr. Taylor to resentencing. Regarding the new trial issue, I want to begin by pointing out what exactly we have to show in terms of prejudice. In Wheeler, our Supreme Court said that prejudice is substantial from an improper argument by a prosecutor and requires a new trial if the jury could have reached a contrary verdict had that improper argument not been made. We don't have to show that the error is outcome determinative. We don't even have to show that the error more likely than not affected the outcome of the trial, just that the jury could have reached a contrary verdict. We believe that standard has been met here. The prosecutor's argument about the meaning of M and L struck at the very heart of Mr. Taylor's alibi defense. If the jury believed that argument, then it really had... The jury in this case was faced with a choice. It could either accept the victim's identification of Mr. Taylor as a robber or it could accept the alibi defense offered by Mr. Taylor through a testimony of Ms. Rodriguez. After the close of the evidence, neither the victim's identification nor the alibi defense was discredited. When the prosecutor says the meaning of L in the telephone records is landline, and he attributed that to my client being on a landline, therefore it wasn't possible for him to be at the home of Ms. Rodriguez because she testified that she didn't have a landline, therefore she was lying on his behalf about where he was at the time of the robbery. That reflects negatively on Mr. Taylor, and that completely eviscerates his alibi defense. If the jury had any doubt based on the alibi defense that the defendant presented to him, any doubt about the identification that the victim gave, that doubt was completely extinguished. Now, I understand that the judge gave an instruction to the jury to disregard the improper argument. We submit that that instruction was not sufficient to cure substantial prejudice, mainly because the improper argument was still incredibly damaging. It eliminated his alibi defense. Secondly, the judge didn't promptly sustain the defense counsel's objection. When the prosecutor initially said M means mobile, L means landline, and counsel objected, the court allowed the prosecutor to continue that argument and to really hammer home his main point and to tie it all together to signify to the jury Ms. Rodriguez was lying, the defendant was not where she said he was. Finally, this argument occurred in rebuttal. It was right before deliberations, and it was fresh in the jury's mind at deliberations. And due to the strength of this argument, we submit that this isn't one of those things where the jury can easily forget. It was incredibly, incredibly damaging. And for those reasons, we'd ask that you grant Mr. Taylor a new trial. But if you do not believe that he's intelligent enough to at least grant him a new sentencing hearing based on the trial court's use of an improper factor in aggravation. Unless there's any further questions, I have nothing further to add. Thank you, Mr. Colfus. Thank you. Mr. Michael. May it please the court, counsel? Laura DeMichael on behalf of the people. First, I need to correct something in my brief. In the nature of the case, I stated it was aggravated battery. It's actually aggravated robbery. I think defendant actually made the same mistake in his brief, and so did the notice of appeal. But he's correct today. It is aggravated robbery. I just wanted to fix that error I made. Turning to the issues, the ML issue is meritless because the trial judge sustained defendant's objection. He stated, I'm not going to allow the prosecutor to argue the meaning of M and L. He stated to the jurors, you should disregard any M and L argument. He stated, there's not enough evidence for a fact finder to draw that inference. And then he repeated that closing argument is not evidence, and jurors needed to disregard any argument not made based on the evidence. The jury is presumed to follow their instructions. And while, yes, the judge did initially permit this argument, ultimately the last thing they heard was disregard, there's not enough evidence, you can't draw that inference. And so, in general, the act of a trial judge sustaining an objection and then properly admonishing the jury is sufficient to cure any prejudice from the improper remarks. And the people submit that that's the case here, where there is no egregious conduct. So the prosecutor, in argument, made clear that he was only arguing an inference. He never said, this is what the cell phone records person testified to. He just said, here's what she testified to. Here's what I think you could find from it. He makes clear it's an inference. Even the trial judge found that inference was permissible initially. As soon as the trial judge changed his mind, the prosecutor completely abandoned that argument. There aren't multiple errors alleged. There's no emotionally inflammatory argument, and ultimately the objection was sustained and the jurors were instructed multiple times that that inference could not be made. Moreover, the alibi, the alibi evidence is weak in any event, because the police had interviewed a defendant about what he had been doing the day of the offense, and he never mentioned his alibi. Instead of saying, you know, I couldn't have been the one that did that crime, because I was here with Rodriguez on Gift Street, he said, when asked what he did that day, he said he was home alone until 3 o'clock at a different residence where he lived with Angela Wilson. So it doesn't make sense that if he had this great alibi, he wouldn't tell police about what that alibi was. And I think the question, where were you on the day of the robbery, could fairly encompass the time of the robbery, not just what did you do after the robbery. Regarding the improper factor argument, that's also without merit, because the trial judge can consider the seriousness of the offense and the nature and circumstances of the offense, including the nature and extent of each element of the offense. This includes considering the degree of force employed as well as the vulnerability of the victim. And in this case, the defense argues that the trial judge considered the victim was weak just because she was a middle-aged lady, but actually the victim testified in this case. Obviously at that point the trial judge would have had the opportunity to observe her, so he wouldn't think she was weak just because she was middle-aged, but he also would have observed her. And more importantly is her testimony of how the crime was actually committed. So it's true that there was a gun used, but the victim stated that the defendant pulled the gun out, and I guess she must be very, very brave because she said she tried to run into the store. She said what stopped her from running into the store was the defendant ran at her, grabbed her by her shirt, picked her up by her shirt, took her and tossed her backwards. Then she fell, and when she hit the cement, the defendant got on top of her, pinned her arms down, and as far as whether maybe she would have been strong enough to get out of this, she said he placed her knees down so she could not go anywhere. So she was physically overpowered. The gun wasn't enough to do it. There's a degree of force here to this robbery that wasn't just the threatening use of the gun. It was actually the physical overpowering. And if there are no further questions, the people who know with regard to the fines issues, we agree that it needs to be remanded for proper imposition of mandatory fines and mandatory fees, but the people would otherwise request that this court affirm the conviction and sentence beside the fees. My colleagues are going to shoot me because they're hungry, but I want to make a record by asking you a question, and maybe the Peoria County state's attorney will listen to the argument in this case. Sure. The judge's court order does not order a DNA analysis fee. It's clear. But the clerk imposed $250. And we all know these issues of fines and costs are coming up. How do we get through to the Peoria County judges or clerk that the judges have to review the assessments of costs within 30 days of the entry of the sentencing order so the defendant has a meaningful way to challenge them in a post-trial motion? I would suggest just for purposes of this record, and please encourage others to listen to the argument, we've done the best we can do. We've reduced assessments that the clerks have imposed without authority, without remanding. Now we're remanding for the courts to go through this analysis. Are we going to have to remand for resentencing and vacate the entire sentence in order to get the courts to do what they should do? Here you're agreeing it should be remanded for the reassessment of costs, the imposition of fines that the judge did not impose. But is that really going to get their attention if we just keep sending them back on financial issues? And why shouldn't we vacate the entire sentence and remand for a new sentence? Because the sentence wasn't an abuse of discretion. And the only reason it needs to be remanded is because the fines and fees are mandatory. So I wish they weren't, and I wish we could say, you know, they were improperly imposed, just get rid of them, let's resolve this here. But because they're mandatory, I can't say that. But where the error that occurred didn't involve the actual sentence in terms of the errors. The sentence is void, at least part of the sentence is void. And I don't understand why we're not vacating the entire sentence and sending it back for the trial judge to consider everything anew and why we dissect it into fines and incarceration. So I'll step off my soapbox. But it's a problem, and it needs to be addressed. There's even an article in the Bar Journal about this. I recognize the fines and fees issue keeps happening. Unfortunately, they're mandatory. But the error is with the fines and fees, but they're mandatory anyway. So someone has to reimpose them. We could reimpose them at the appellate court level. There's the authority to do so. But in this case, because there's so many different codes, and even I couldn't figure out, in all honesty, what all the codes matched up with. If we had, hopefully, and other counties have more complete orders detailing which fine matches up with what, then on appeal, we'd be able to resolve just the fines and fees issues. But because they're mandatory, and it didn't affect what the trial judge imposed in terms of term of years. The DNA analysis fee is routinely imposed by the circuit clerks in Marietta County in the absence of a written court order. And I know that there are circuit clerks that are being sued in class action lawsuits. Yes, the trial judge didn't err in imposing it, unfortunately. It was later imposed by the clerk. Okay. Thank you. Thank you for indulging me. Thank you both for your arguments here today. This matter will be taken. Oh, I'm sorry. You're fine. I got all confused there for a second. Because of me. No, no, no. I'm sorry. Mr. Goldfuss? We really are hungry. I just was confused by Vicki's stuff. Let's follow up on that question. Mike, if you assert the sentence is void, and I don't think it's necessarily void because the clerk did something the judge didn't order. I think it's void because the judge didn't impose mandated fines such as the VCD fine in this case. Sure. If part of the sentence is void, why don't you automatically get a do-over of the entire sentencing hearing? Why are you asking, dissecting your request? My concern as a defense attorney would be having it go back in the entire sentence and the judge imposing a greater term of years on resentencing than he did initially. I think that's a concern. Aside from that, I don't see another reason why you couldn't, personally. If you want to get the message across, you need to do this. We're vacating the entire sentence. Then, yeah, that might be a better way to get it across. But your position is that may not be in the best interest of every defendant? Correct. All right. I understand your point. Just briefly, to hit on the new trial issue again, the state argued that there's no egregious conduct, that the prosecutor thought he was making a reasonable inference, and once the judge said, no, we're not going to go down that path, the prosecutor complied. That's great, but that's not the standard here. The standard is, what is the degree of prejudice that my client suffered? It doesn't matter what the prosecutor was thinking, what his intent was, whether he did something mentally bad or not bad. That doesn't matter. What matters is how much prejudice my client suffered. And the reasons I discussed before, that prejudice is substantial, given the very nature of the argument that he made, and that has struck through the heart of his alibi defense. Mr. Michael argued that there's not multiple errors, there's just one single improper argument. Again, that doesn't matter. As I cited in my brief, I believe I cited the Barraza case, one improper argument is enough to get reversal. It doesn't have to be multiple improper arguments. Yes, you consider the closing argument as a whole, I understand that, but one improper argument can do it. Regarding the weakness of the alibi, I want to make several points about this. There's nothing in the evidence saying that the detective asked my client where he was at the time of the offense, because there's nothing in the evidence indicating that my client knew what time the offense occurred. There's just nothing indicating that my client knew it occurred around noon. The question put to my client by the detective was, what did you do on the day of the robbery? The detective acknowledged at trial, I didn't ask him what he did in the morning at the time of the robbery, what he did before he said he was at home. He acknowledges that. Now, I'd like to use a hypothetical to explain potentially why my client didn't come out and say what he did in the morning. Suppose my mother would call me when I get home, and she were to ask me, what did you do today? My answer, and I guarantee this is what it would be, I was in court today and I was arguing two cases before the appellate court, and I would probably explain what those arguments were about, and she'd probably go and listen to them online. What I'm not going to say is... Thank goodness somebody is doing that. What I'm not going to say is, I woke up at 5.30, I took a shower, I put on my suit, I had breakfast, I drove 45 minutes down Route 71 to get to work. Why? Because I don't view that as a significant part of my day, and I'm not going to focus on that in my answer to my mom. But, to link that in, unless there's evidence that my client knew what time this robbery occurred, or of the detective specifically asking him, what did you do in the morning, what did you do at noon, my client could be in the exact same position that I'm in, he just may not think that being at Rodriguez's place is significant, and that just may not cross his mind, unless he specifically asked, what did you do, or he's told, hey, this robbery occurred in the morning, what were you doing in the morning, where were you? In terms of the improper sentencing, again, I understand the use of force involved, that she tried to get inside, the robbers prevented her from going over, they took her to the ground, they pinned her down, but, again, I just want to emphasize, there is no reason for a judge to refer to middle-aged women as a class. There just is not. There's not a legitimate reason for that. So, unless the court has any further questions, I've got nothing further, and, again, we ask for the same relief. Thank you. Thank you. Thank you both for your arguments today. Thank you, Mrs. Golfos, for listening to our arguments today. You're sending a nice job. This matter will be taken under advisement, and a written decision will be issued as soon as possible.